**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH EVANS and KENYA EVANS, | ) | |
| as the Independent Administrators of the | ) | |
| Estate of KHAYLA J. EVANS, deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 23-cv-04248 |
| vs. | ) | |
| | ) | Hon. Harry D. Leinenweber |
| LAKE COUNTY, ILLINOIS; | ) | |
| JOHN IDLEBURG; LIEUTENANT NICHOLAS | ) | |
| KALFAS; OFFICER PAMELA CASTILLO; | ) | |
| OFFICER LARISA TATE; OFFICER KRYSTLE | ) | |
| REED; OFFICER KRISTIN DEBBEN; OFFICER | ) | |
| KELLY ANDERSON, OFFICER JESSICA | ) | |
| RODRIGUEZ; LAKE COUNTY SHERIFF'S | ) | |
| OFFICER CP#27107; WELLPATH, LLC, a | ) | |
| Foreign Corporation; NICHOLAS PAPANOS, MD; | ) | |
| KERRY EHLERT-DONOVAN, LPN; | ) | |
| TARYN WEILER, RN; CONSUELO REYES, | ) | |
| RN; WAUKEGAN ILLINOIS HOSPITAL | ) | |
| COMPANY, LLC d/b/a VISTA MEDICAL | ) | |
| CENTER EAST, an Illinois Corporation; | ) | |
| JARROD BARKER, MD; SARA FERRERA, | ) | |
| MD; SHAHRUKH MALGHANI, MD; NEIL | ) | |
| PULLER, MD; AMERICAN PHYSICIAN | ) | |
| PARTNERS, LLC, a Foreign Corporation, | ) | |
| TZVETAN NAYDENOV, MD; and KENJI | ) | |
| OYASU, MD; | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT AT LAW

NOW COME Plaintiffs, KENNETH EVANS and KENYA EVANS, as the Independent

Administrators of the Estate of KHAYLA J. EVANS, deceased, and in complaining of Defendants,

LAKE COUNTY, ILLINOIS; JOHN IDLEBURG, in his Official Capacity as LAKE COUNTY

SHERIFF; LIEUTENANT NICHOLAS KALFAS; OFFICER PAMELA CASTILLO; OFFICER

LARISA TATE; OFFICER KRYSTLE REED; OFFICER KRISTIN DEBBEN; OFFICER KELLY

1

ANDERSON; OFFICER JESSICA RODRIGUEZ; LAKE COUNTY SHERIFF'S OFFICER CP#27107; WELLPATH, LLC, a Foreign Corporation; NICHOLAS PAPANOS, MD; KERRY EHLERT-DONOVAN, LPN; TARYN WEILER, RN; CONSUELO REYES, RN; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC d/b/a VISTA MEDICAL CENTER EAST, an Illinois Corporation; JARROD BARKER, MD; SARA FERRERA, MD; SHAHRUKH MALGHANI, MD; NEIL PULLER, MD; AMERICAN PHYSICAIN PARTNERS, LLC, a Foreign Corporation; TZVETAN NAYDENOV, MD; and KENJI OYASU, MD; and each of them, state and allege as follows:

## NATURE OF COMPLAINT

1.      This is a civil action arising under 42 U.S.C.A. § 1983. Plaintiffs allege a violation of the decedent's civil rights under the United States Constitution, in that the decedent was deprived of adequate medical care and treatment by the Defendants with a deliberate indifference to serious medical needs. Plaintiffs make a demand for a jury trial.

## JURISDICTION

2.      Jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and (b); the Constitution of the United States.

3.      Plaintiffs further invoke this Court's supplementary jurisdiction powers pursuant to 28 U.S.C. § 1367 for the pendent state claims alleged herein.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to Plaintiffs' claims took place within the Northern District of Illinois.

## PARTIES

5.      Plaintiffs, KENNETH EVANS and KENYA EVANS, are residents of City of Lancaster, County of Dallas, State of Texas and was duly appointed by the Nineteenth Judicial

2

Circuit Court of Lake County to serve as the Independent Administrators and representatives of the Estate of KHAYLA J. EVANS, deceased.

6.      Decedent, KHAYLA J. EVANS, was a U.S. Citizen and was an inmate at the Lake County Adult Corrections Facility in the City of Waukegan, County of Lake, State of Illinois.

7.      Defendant, LAKE COUNTY, ILLINOIS (hereinafter "LAKE COUNTY") is a governmental entity within the State of Illinois which funds and operates the Lake County Adult Corrections Facility and Lake County Sheriff's Office and is a necessary party and is ultimately responsible for Judgment or Settlement under Federal Rules of Civil Procedure 17 and 19.

8.      Defendant, JOHN IDLEBURG, in his Official Capacity as LAKE COUNTY SHERIFF, (hereinafter "LAKE COUNTY SHERIFF") was at all relevant times, the duly elected Sheriff of Lake County and the Chief Administrator of the Lake County Adult Corrections Facility. At all times relevant, he was acting under color of law and in the course and scope of his employment as the agent, servant, and official policy maker for the LAKE COUNTY ADULT CORRECTIONS FACILITY, on issues relating to the treatment of prisoners in the LAKE COUNTY ADULT CORRECTIONS FACILITY and the policies, procedures and customs, as well as the acts and omissions, challenged by this suit and as the County's chief law enforcement officer.

9.      Defendant, LAKE COUNTY SHERIFF, had at all relevant times policymaking authority over the Lake County Adult Corrections Facility, its staff, and its medical personnel. LAKE COUNTY SHERIFF is responsible for promulgating rules, regulations, policies, and procedures as Sheriff of Lake County, including for the provision of medical care by medical personnel and jail staff.

10.     Defendant, LAKE COUNTY SHERIFF, was at all relevant times, the commanding officer of all Lake County Sheriff's deputies, corrections officers, and jail employees and he was responsible for their training, supervision, and conduct.

11.     Defendant, LAKE COUNTY SHERIFF is responsible for the establishment and implementation of the policies, procedures, practices, and customs, as well as the acts and omission charged in Counts 1, 2, 4, 5, 7, 8, and 9 of this Complaint.

12.     Defendant, LAKE COUNTY, is also responsible for ensuring that all of its entities, including the LAKE COUNTY SHERIFF, is in compliance with federal and state law, department or agency policies, rules and regulations, and related standards of care.

13.     Defendant, LIEUTENANT NICHOLAS KALFAS, was an officer and supervisor at the Lake County Adult Corrections Facility, was employed by the LAKE COUNTY SHERIFF during the events complained of, and contributed to injuries suffered by the Plaintiff, through his acts and omissions. LIEUTENANT NICHOLAS KALFAS is sued in his individual capacity.

14.     Defendant, OFFICER PAMELA CASTILLO, was an officer at the Lake County Adult Corrections Facility, was employed by the LAKE COUNTY SHERIFF during the events complained of, and contributed to injuries suffered by the Plaintiff, through her acts and omissions. OFFICER PAMELA CASTILLO is sued in her individual capacity.

15.     Defendant, OFFICER LARISA TATE, was an officer at the Lake County Adult Corrections Facility, was employed by the LAKE COUNTY SHERIFF during the events complained of, and contributed to injuries suffered by the Plaintiff, through her acts and omissions. OFFICER LARISA TATE is sued in her individual capacity.

16.     Defendant, OFFICER KRYSTLE REED, was an officer at the Lake County Adult Corrections Facility, was employed by the LAKE COUNTY SHERIFF during the events

4

complained of, and contributed to injuries suffered by the Plaintiff, through her acts and omissions. OFFICER KRYSTLE REED is sued in her individual capacity.

17.     Defendant, OFFICER KRISTIN DEBBEN, was an officer at the Lake County Adult Corrections Facility, was employed by the LAKE COUNTY SHERIFF during the events complained of, and contributed to injuries suffered by the Plaintiff, through her acts and omissions. OFFICER KRISTIN DEBBEN is sued in her individual capacity.

18.     Defendant, OFFICER KELLY ANDERSON, was an officer at the Lake County Adult Corrections Facility, was employed by the LAKE COUNTY SHERIFF during the events complained of, and contributed to injuries suffered by the Plaintiff, through her acts and omissions. OFFICER KELLY ANDERSON is sued in her individual capacity.

19.     Defendant, OFFICER JESSICA RODRIGUEZ, was an officer at the Lake County Adult Corrections Facility, was employed by the LAKE COUNTY SHERIFF during the events complained of, and contributed to injuries suffered by the Plaintiff, through her acts and omissions. OFFICER JESSICA RODRIGUEZ is sued in her individual capacity.

20.     Defendant, LAKE COUNTY SHERIFF'S OFFICER CP#27107, was an officer at the Lake County Adult Corrections Facility, was employed by the LAKE COUNTY SHERIFF during the events complained of, and contributed to injuries suffered by the Plaintiff, through her acts and omissions. OFFICER CP#27107 is sued in her individual capacity.

21.     From July 1, 2022 through December 16, 2022 and prior, Defendant WELLPATH, LLC (hereinafter "WELLPATH"), was at all relevant times, a foreign corporation contracted to provide medical and mental health services at the Lake County Adult Corrections Facility.

22.     From July 1, 2022 through December 16, 2022 and prior, Defendant, WELLPATH, was acting under color of state law, ordinances and/or regulations and is being sued in its official capacity for monetary relief.

23.     From July 1, 2022 through December 16, 2022, Defendant, NICHOLAS PAPANOS, MD, was an Illinois resident and was employed, retained, and/or contracted by LAKE COUNTY SHERIFF as a medical doctor to provide medical care to inmates at Lake County Adult Corrections Facility. He is sued in his individual and official capacities, as an agent of LAKE COUNTY SHERIFF.

24.     From July 1, 2022 through December 16, 2022, Defendant NICHOLAS PAPANOS, MD, was an actual and/or apparent agent of LAKE COUNTY SHERIFF.

25.     From July 1, 2022 through December 16, 2022, Defendant KERRY EHLERT-DONOVAN, LPN, was an Illinois resident and was employed, retained, and/or contracted by LAKE COUNTY SHERIFF, and/or WELLPATH as a Licensed Practical Nurse to provide nursing and medical care to inmates at Lake County Adult Corrections Facility. She is sued in her individual and official capacities, as an employee and/or agent of LAKE COUNTY SHERIFF, and/or WELLPATH.

26.     From July 1, 2022 through December 16, 2022, Defendant KERRY EHLERT-DONOVAN, LPN, was an actual and/or apparent agent of LAKE COUNTY SHERIFF.

27.     From July 1, 2022 through December 16, 2022, Defendant TARYN WEILER, was an Illinois resident and was employed, retained, and/or contracted by LAKE COUNTY SHERIFF, and/or WELLPATH, as a Registered Nurse to provide nursing and medical care to inmates at Lake County Adult Corrections Facility. She is sued in her individual and official capacities, as an employee and/or agent of LAKE COUNTY SHERIFF, and/or WELLPATH.

6

28.     From July 1, 2022 through December 16, 2022, Defendant CONSUELO REYES, was an Illinois resident and was employed, retained, and/or contracted by LAKE COUNTY SHERIFF, and/or WELLPATH, as a Registered Nurse to provide nursing and medical care to inmates at Lake County Adult Corrections Facility. She is sued in her individual and official capacities, as an employee and/or agent of LAKE COUNTY SHERIFF, and/or WELLPATH.

29.     Defendant WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC d/b/a VISTA MEDICAL CENTER EAST (hereinafter "VISTA EAST") was at all relevant times, an Illinois Corporation providing medical services in the Lake County, Illinois area.

30.     Defendant VISTA EAST was an Illinois Corporation licensed and registered by the State of Illinois as a healthcare facility which employed various medical professionals.

31.     At all times relevant, VISTA EAST provided medical services to the public and held itself out to the public generally as a provider of medical services.

32.     At all times relevant, JARROD BARKER, MD was a physician licensed to practice in the State of Illinois.

33.     On November 23, 2022, JARROD BARKER, MD provided medical treatment to KHAYLA J. EVANS as an employee of VISTA EAST.

34.     On November 23, 2022, JARROD BARKER, MD provided medical treatment to KHAYLA J. EVANS as an apparent agent of VISTA EAST.

35.     On November 23, 2022, JARROD BARKER, MD provided medical treatment to KHAYLA J. EVANS as an actual agent of VISTA EAST.

36.     At all times relevant, SARA FERRERA, MD was a physician licensed to practice in the State of Illinois.

37.     That on or about December 2, 2022 through December 5, 2022, SARA FERRERA, MD provided medical treatment to KHAYLA J. EVANS as an employee of VISTA EAST.

38.     That on or about December 2, 2022 through December 5, 2022, SARA FERRERA, MD provided medical treatment to KHAYLA J. EVANS as an apparent agent of VISTA EAST.

39.     That on or about December 2, 2022 through December 5, 2022, SARA FERRERA, MD provided medical treatment to KHAYLA J. EVANS as an actual agent of VISTA EAST.

40.     At all times relevant, SHAHRUKH MALGHANI, MD was a physician licensed to practice in the State of Illinois.

41.     That on or about December 9, 2022 through December 13, 2022, SHAHRUKH MALGHANI, MD provided medical treatment to KHAYLA J. EVANS as an employee of VISTA EAST.

42.     That on or about December 9, 2022 through December 13, 2022, SHAHRUKH MALGHANI, MD provided medical treatment to KHAYLA J. EVANS as an apparent agent of VISTA EAST.

43.     That on or about December 9, 2022 through December 13, 2022, SHAHRUKH MALGHANI, MD provided medical treatment to KHAYLA J. EVANS as an actual agent of VISTA EAST.

44.     At all times relevant, NEIL PULLER, MD was a physician licensed to practice in the State of Illinois.

45.     That on or about December 9, 2022 through December 13, 2022, NEIL PULLER, MD provided medical treatment to KHAYLA J. EVANS as an employee of VISTA EAST.

46.     That on or about December 9, 2022 through December 13, 2022, NEIL PULLER, MD provided medical treatment to KHAYLA J. EVANS as an apparent agent of VISTA EAST.

47.    That on or about December 9, 2022 through December 13, 2022, NEIL PULLER, MD provided medical treatment to KHAYLA J. EVANS as an actual agent of VISTA EAST.

48.    At all times relevant, AMERICAN PHYSICIAN PARTNERS, LLC was a Foreign corporation offering medical services in the State of Illinois.

49.    That on or about December 9, 2022 through December 13, 2022, AMERICAN PHYSICIAN PARTNERS, LLC employed TZVETAN NAYDENOV, MD.

50.    That on or about December 9, 2022 through December 13, 2022, AMERICAN PHYSICIAN PARTNERS, LLC employed KENJI OYASU, MD.

51.    That on or about December 2, 2022 through December 5, 2022, TZVETAN NAYDENOV, MD provided medical treatment to KHAYLA J. EVANS as an employee of VISTA EAST.

52.    That on or about December 2, 2022 through December 5, 2022, TZVETAN NAYDENOV, MD provided medical treatment to KHAYLA J. EVANS as an apparent agent of VISTA EAST.

53.    That on or about December 2, 2022 through December 5, 2022, TZVETAN NAYDENOV, MD provided medical treatment to KHAYLA J. EVANS as an actual agent of VISTA EAST.

54.    That on or about December 9, 2022 through December 13, 2022, KENJI OYASU, MD provided medical treatment to KHAYLA J. EVANS as an employee of VISTA EAST.

55.    That on or about December 9, 2022 through December 13, 2022, KENJI OYASU, MD provided medical treatment to KHAYLA J. EVANS as an apparent agent of VISTA EAST.

56.    That on or about December 9, 2022 through December 13, 2022, KENJI OYASU, MD provided medical treatment to KHAYLA J. EVANS as an actual agent of VISTA EAST.

## COMMON FACTS

57.     On June 30, 2022, KHAYLA J. EVANS was arrested and placed into the custody of the Defendant LAKE COUNTY SHERIFF in Lake County, Illinois.

58.     On or about June 30, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHALYA J. EVANS was currently taking the following prescribed medications: Geodon 80mg 1-2 tabs daily, Vistaril/Hydroxyzine hcl 25 mg 2 a day, Fluoxetine 20mg 3 tabs AM, Guanfacine 1mg 1.5 tabs PM, Trazadone 50 mg PRN, Hydrochlorothiazide 12.5 mg AM, Doxycycline mono 100 mg AM/PM.

59.     Prior to detention with the LAKE COUNTY SHERIFF, KHAYLA J. EVANS had psychiatric history of Intermittent Explosive Disorder and ADHD.

60.     KHAYLA J. EVANS had an Intelligence Quotient "IQ" of only 63 and was intellectually disabled.

61.     On or about June 30, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHALYA J. EVANS had a past history of mental illness.

62.     At all times relevant, it was obvious even to non-medical professionals that KHAYLA J. EVANS was intellectually disabled.

63.     On or about June 30, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff knew that KHAYLA J. EVANS required pharmacologic management for her mental health and physical health.

64.     Upon being placed into custody at the Lake County Adult Corrections Facility and despite knowledge of KHAYLA J. EVANS' mental health conditions and intellectual disability, on or about July 1, 2022 the above-listed medications were not given to KHAYLA J. EVANS by LAKE COUNTY SHERIFF staff, nor WELLPATH staff.

10

65. From July 1, 2022 through KHAYLA J. EVANS' death on December 16, 2022, and despite knowledge of KHAYLA J. EVANS' mental health condition, physical health condition, and intellectual disability, LAKE COUNTY SHERIFF staff and/or WELLPATH staff altered the pharmacologic regimen of KHAYLA J. EVANS.

66. On or about July 1, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS' medications had not been verified yet and that she was "starting to feel the effects of missing her doses."

67. On or about July 4, 2022, KHAYLA J. EVANS experienced a psychiatric episode, wherein she threw a chair and stated that she needed to be taken to a mental hospital or else she was going to be leaving in a body bag.

68. On or about July 4, 2022, KHAYLA J. EVANS was maced and placed in restraints by LAKE COUNTY SHERIFF staff and/or WELLPATH staff.

69. Employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to, Nurse Jayne Bender and Katrina Haywood were aware that KHAYLA J. EVANS suffered an obvious psychiatric emergency and was at risk of self-harm.

70. On or about July 9, 2022, KHAYLA J. EVANS reported severe stomach pain to LAKE COUNTY SHERIFF staff and/or WELLPATH staff.

71. Employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to, Officer CP #27107, Nurse Maria Tatro, Nurse Cecilia Cardona, Sergeant Abdeljaber, and Sergeant Jahaira Lopez, were aware that KHAYLA J. EVANS was experiencing severe stomach pain.

72. Despite KHAYLA J. EVANS' obvious medical condition and being "doubled over with pain," KHAYLA J. EVANS was not seen by a physician and was not taken to a hospital.

73.     On or about July 11, 2022, KHAYLA J. EVANS reported stomach pain to LAKE COUNTY SHERIFF staff and/or WELLPATH staff.

74.     On or about July 13, 2022, KHAYLA J. EVANS reported anxiety to LAKE COUNTY SHERIFF staff and/or WELLPATH staff.

75.     Despite knowledge of KHAYLA J. EVANS' recurring stomach pain and anxiety, during the month of July 2022, no medical doctor was contacted to assess the condition of KHAYLA J. EVANS.

76.     That in the month of July 2022, KHAYLA J. EVANS was seen by the following employees, agents, and/or servants of LAKE COUNTY SHERIFF staff and/or WELLPATH staff: Officer Krystle Reed, Nurse Jayne Bender, Nurse Maria Tatro, NP Kerry Ehlert-Donovan, and LPN Cecilia Cardona.

77.     On or about August 12, 2022, KHAYLA J. EVANS was yelling that she needed help.

78.     On or about August 12, 2022, KHAYLA J. EVANS experienced a psychiatric episode, wherein she was in and out of psychosis, experienced hallucinations, and banged her head on the cell wall.

79.     Employees and/or agents of LAKE COUNTY SHERIFF staff /or WELLPATH staff, including but not limited to, Social worker Peggy Butler, Sergeant Timothy Specht, Sergeant Albert Ebert, Officer Larisa Tate, Officer Maritka Liscomb, and Gia Gregoria were aware that KHAYLA J. EVANS suffered an obvious psychiatric emergency and was at risk of self-harm.

80.     Despite knowledge of an obvious psychiatric emergency and a risk of self-harm, no physician or psychiatrist was contacted to assess KHAYLA J. EVANS following this event.

12

81.     On or about August 14, 2022, Lake County Adult Corrections Facility had knowledge that KHAYLA J. EVANS was not eating and had refused four meals.

82.     On or about August 26, 2022, KHAYLA J. EVANS experienced a psychiatric episode, wherein she was speaking to herself and "exhibiting bizarre behavior."

83.     On or about August 29, 2022, KHAYLA J. EVANS reported dizziness to LAKE COUNTY SHERIFF staff and/or WELLPATH staff.

84.     That in the month of August 2022, KHAYLA J. EVANS was seen by the following employees, agents, and/or servants of LAKE COUNTY SHERIFF and/or WELLPATH: Officer Pamela Castillo, Officer Jennifer Jordan, Officer Larisa Tate, Nurse Valeria Perez Huerta, Director of Nursing Consuelo Reyes, Nurse Idalia Alvarez Pinto, NP Kerry Ehlert-Donovan, Social worker Ericka Erdakos, and LPC Michael Griffin.

85.     On or about September 7, 2022, KHAYLA J. EVANS experienced a psychiatric episode, wherein she hit her head on a cell window and was scratching her arms stating there were bugs on her.

86.     On or about September 7, 2022 KHAYLA J. EVANS was yelling for a nurse and crying hysterically.

87.     Employees and/or agents of LAKE COUNTY SHERIFF staff and/or WELLPATH staff, including but not limited to, Officer Rodriguez #25611, Social worker Peggy Butler, Nurse Riley Kleutgen, Social worker Ericka Erdakos, LPC Michael Griffin, and Sergeant Jahaira Lopez were aware that KHAYLA J. EVANS suffered an obvious psychiatric emergency and was at risk of self-harm.

88.     Despite knowledge of an obvious psychiatric emergency and a risk of self-harm, no physician or psychiatrist was contacted to assess KHAYLA J. EVANS following this event.

89.     Despite knowledge of an obvious psychiatric emergency and a risk of self-harm, KHAYLA J. EVANS was placed on suicide watch in general population, not the medical unit or a hospital.

90.     On or about September 12, 2022, KHAYLA J. EVANS was yelling for help, screaming, and pressing the duress button.

91.     On or about September 12, 2022, KHAYLA J. EVANS experienced a psychiatric episode, wherein she was yelling in her cell and banging on the door.

92.     Employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to, Officer Kristin Debban, Officer Rodriguez #25611, Officer Krystle Reed, Social worker Ericka Erdakos, Psych NP Brianna Wicinski, LPC Michael Griffin, and Social worker Peggy Butler were aware that KHAYLA J. EVANS suffered an obvious psychiatric emergency and was at risk of self-harm.

93.     Despite knowledge of an obvious psychiatric emergency and a risk of self-harm, no physician, nurse, or psychiatrist was contacted to assess KHAYLA J. EVANS following this event.

94.     On or about September 23, 2022, KHAYLA J. EVANS fell from her bunk in her cell.

95.     Employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to, Nurse Riley Kleutgen, Nurse Gia Gregoria, Nurse Maria Tatro and Officer Pamela Castillo #27721 were aware that KHAYLA J. EVANS suffered a fall on September 23, 2022.

96.     Despite knowledge of KHAYLA J. EVANS' fall, no physician was contacted and KHAYLA J. EVANS was not transported to a hospital.

14

97.     On or about September 25, 2022, LAKE COUNTY SHERIFF Officer Pamela Castillo #27721 noted that KHAYLA J. EVANS was not eating her meals.

98.     On or about September 25, 2022, LAKE COUNTY SHERIFF Officer Pamela Castillo #27721 noted that "Nurse Jayne" was advised that KHAYLA J. EVANS was not eating and yet, KHAYLA J. EVANS was not appropriately assessed by any medical provider.

99.     On or about September 29, 2022, KHAYLA J. EVANS reported that she was feeling ill to LAKE COUNTY SHERIFF staff and/or WELLPATH staff.

100.     On or about September 29, 2022, LAKE COUNTY SHERIFF Officer Kristin Debban noted that she spoke with Nurse Shelby Flores.

101.     Despite knowledge of KHAYLA J. EVANS' complaints, KHAYLA J. EVANS was not appropriately assessed by any medical provider.

102.     On or about September 30, 2022, a LAKE COUNTY SHERIFF officer noted that KHAYLA J. EVANS was not eating her meals.

103.     On or about September 30, 2022, LAKE COUNTY SHERIFF Officer Kristin Debban told other officers including Officer "CP #27107" that she was not eating meals.

104.     On and before September 30, 2022, employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to, Officer Kristin Debban, Officer Pamela Castillo #27721, Nurse Jayne Bender, Social worker Peggy Butler, Officer Carissa Popp, Officer Anna Szara, and Sergeant Timothy Specht, were aware that KHAYLA J. EVANS was not eating.

105.     Neither LAKE COUNTY SHERIFF nor WELLPATH transported KHAYLA J. EVANS to a hospital in the month of September 2022.

15

106.    Neither LAKE COUNTY SHERIFF nor WELLPATH referred KHAYLA J. EVANS to a physician in the month of September 2022.

107.    Neither LAKE COUNTY SHERIFF nor WELLPATH referred KHAYLA J. EVANS to a psychiatrist in the month of September 2022.

108.    On or about October 10, 2022, KHAYLA J. EVANS reported that she was feeling ill to LAKE COUNTY SHERIFF nor WELLPATH and specifically requested to see a doctor.

109.    Despite asking Director of Nursing Consuelo Reyes to see a doctor, KHAYLA J. EVANS was not assessed by a physician or taken to a hospital.

110.    On or about October 11, 2022, KHAYLA J. EVANS was found by a Court to be unfit to stand trial.

111.    On or about October 19, 2022, KHAYLA J. EVANS was evaluated by Dr. Diadra Marano of the Illinois Department of Human Services and was found to be unfit.

112.    On or about October 19, 2022, Dr. Diadra Marano of the Illinois Department of Human Services notified LAKE COUNTY SHERIFF that KHAYLA J. EVANS was found unfit.

113.    On or about October 25, 2022, a LAKE COUNTY SHERIFF officer noted that KHAYLA J. EVANS was not eating her meals for three consecutive days.

114.    Employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to, Officer Larisa Tate, Social worker Peggy Butler, and Sergeant Albert Ebert were aware that KHAYLA J. EVANS was not eating.

115.    Despite knowledge that KHAYLA J. EVANS was not eating, KHAYLA J. EVANS was not appropriately assessed by any medical provider.

116.    On or about October 30, 2022, LAKE COUNTY SHERIFF, by and through Lieutenant Nicholas Kalfas, changed KHAYLA J. EVANS' Classification Status to Status 4 which

16

"require[s] closer supervision and the special attention of jail administration" because KHAYLA J. EVANS posed a risk of self-harm.

117.     Despite these incidents, neither LAKE COUNTY SHERIFF nor WELLPATH transported KHAYLA J. EVANS to a hospital in the month of October 2022.

118.     Despite these incidents, neither LAKE COUNTY SHERIFF nor WELLPATH referred KHAYLA J. EVANS to a physician in the month of October 2022.

119.     Despite these incident, neither LAKE COUNTY SHERIFF nor WELLPATH referred KHAYLA J. EVANS to a psychiatrist in the month of October 2022.

120.     That in the month of October 2022, KHAYLA J. EVANS was seen by the following employees, agents, and/or servants of LAKE COUNTY SHERIFF and/or WELLPATH: Nurse Valeria Perez Huerta, Nurse Jayne Bender, LPA Christine Torcaso, Nurse Brittany Orduna-Santos, and Nurse Maria Tatro.

121.     On or about November 12, 2022, KHAYLA J. EVANS experienced a psychiatric episode, wherein she was yelling in her cell and banging on the door.

122.     On or about November 16, 2022, KHAYLA J. EVANS fell in her cell.

123.     Employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to Officer "CP #27107", Nurse Idalia Alavez Pinto, Nurse Jayne Bender, Director of Nursing Consuelo Reyes, Officer Ana Becerra Reyes, and LPN Elida Pulido were aware that KHAYLA J. EVANS suffered a fall on November 16, 2022.

124.     Despite knowledge of KHAYLA J. EVANS' fall, no physician was contacted and KHAYLA J. EVANS was not transported to a hospital.

125.     On or about November 17, 2022, KHAYLA J. EVANS fell in her cell.

126.    Employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to Officer "CP #27107" and Nurse Jayne Bender were aware that KHAYLA J. EVANS suffered a fall on November 17, 2022.

127.    Despite knowledge of KHAYLA J. EVANS' fall, no physician was contacted and KHAYLA J. EVANS was not transported to a hospital.

128.    On or about November 20, 2022, KHAYLA J. EVANS reported that she could not move her legs and that her legs were numb to LAKE COUNTY SHERIFF staff and/or WELLPATH staff.

129.    On or about November 20, 2022, KHAYLA J. EVANS told Officer Kristin Debban that "her legs don't move" and Officer Debban told her she can get up to go to her sink.

130.    Employees and/or agents of LAKE COUNTY SHERIFF and/or WELLPATH, including but not limited to Officer Kristin Debban, Psychiatry NP Brianna Wicinski, and Nurse Kristin Porcaso were aware that KHAYLA J. EVANS could no longer move her legs.

131.    On or about November 20, 2022, KHAYLA J. EVANS reported to Psychiatry NP Brianna Wicinski that "I can't get out of bed because my legs hurt so much and they are weak."

132.    Despite knowledge of KHAYLA J. EVANS' complaints of leg pain, difficulty ambulating, and weakness, no medical provider was contacted and KHAYLA J. EVANS was not transported to a hospital.

133.    Despite this knowledge, on or about November 20, 2022, KHAYLA J. EVANS requested water from an agent of LAKE COUNTY SHERIFF and/or WELLPATH, who told her that "there is nothing wrong with her legs[.]"

134.    On or about November 22, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS required assistance showering because she could not ambulate.

135.    On or about November 22, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS had not eaten for days.

136.    Employees and/or agents of LAKE COUNTY SHERIFF staff and/or WELLPATH staff, including but not limited to Officer Tyler #25484, Director of Nursing Consuelo Reyes, Social worker Peggy Butler, Officer Michelle Marte, and LPC Michael Griffin were aware that KHAYLA J. EVANS could no longer ambulate without assistance.

137.    On or about November 23, 2022, KHAYLA J. EVANS reported that she could not stand or move to an agent and/or employee of LAKE COUNTY SHERIFF and/or WELLPATH.

138.    On or about November 23, 2022, KHAYLA J. EVANS was screaming that she could not stand and that it hurt to stand.

139.    Neither LAKE COUNTY SHERIFF nor WELLPATH transported KHAYLA J. EVANS to a hospital until November 23, 2022.

140.    Neither LAKE COUNTY SHERIFF nor WELLPATH referred KHAYLA J. EVANS to a physician until November 23, 2022.

141.    On November 23, 2022, KHAYLA J. EVANS was transported via ambulance from the Lake County Adult Corrections Facility to Defendant VISTA EAST.

142.    On November 23, 2022, KHAYLA J. EVANS was evaluated by JARROD BARKER, MD.

143.    On November 23, 2022, JARROD BARKER, MD did not order the appropriate diagnostic testing or imaging of KHAYLA J. EVANS.

19

144.    On November 23, 2022, JARROD BARKER, MD did not admit KHAYLA J. EVANS for further treatment.

145.    On November 23, 2022, KHAYLA J. EVANS was transported back to Lake County Adult Corrections Facility without being admitted to VISTA EAST.

146.    On or about November 24, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS threw up medication and bile.

147.    On or about November 26, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff placed KHAYLA J. EVANS in a diaper because she was defecating and urinating on herself.

148.    On or about November 26, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff placed KHAYLA J. EVANS in a diaper because she could not ambulate to use the toilet in her cell.

149.    On or about November 28, 2022, LAKE COUNTY SHERIFF staff transferred KHAYLA J. EVANS to a new cell because she was defecting and urinating on herself and on her cell mattress.

150.    On or about November 29, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH had knowledge that KHAYLA J. EVANS vomited medication.

151.    On or about November 29, 2022, KHAYLA J. EVANS was seen by KERRY EHLERT-DONOVAN, LPN and NICHOLAS PAPANOS, MD at the jail.

152.    After November 29, 2022, NICHOLAS PAPANOS, MD did not return to assess KHAYLA J. EVANS or follow up on her condition.

153.    From November 24, 2022 through on or about December 2, 2022, neither LAKE COUNTY SHERIFF, WELLPATH, KERRY EHLERT-DONOVAN, LPN nor NICHOLAS

PAPANOS, MD requested that KHAYLA J. EVANS be transported to a hospital despite suffering from obvious medical distress.

154.    That in the month of November 2022, KHAYLA J. EVANS was seen by the following employees, agents, and/or servants of LAKE COUNTY SHERIFF and/or WELLPATH: Officer Anna Becerra Reyes, Officer Kristin Debban, Officer Erica Landree, Officer Loretta Onan, Officer Larisa Tate, Officer Jennifer Jordan, Officer Michelle Marte, Officer Oliva Martinez, Officer Carissa Popp, Officer Krystle Reed, NP Kerry Ehlert-Donovan, HSA Taryn Weiler, Nurse Maria Tatro, LPN Elida Pulido, LPN Jeff Vistan, Nurse Jane Bender, Nurse Idalia Alvarez Pinto, Nurse Christine Porcaso, Psychiatric NP Brianna Wicinski, and LPC Michael Griffin.

155.    On or about December 2, 2022 through December 5, 2022, KHAYLA J. EVANS was hospitalized at VISTA EAST.

156.    On or about December 2, 2022 through December 5, 2022, KHAYLA J. EVANS was evaluated by SARA FERRERA, MD and TZVETAN NAYDENOV, MD.

157.    On or about December 2, 2022 through December 5, 2022 neither SARA FERRERA, MD and TZVETAN NAYDENOV, MD ordered appropriate diagnostic testing of KHAYLA J. EVANS.

158.    On or about December 2, 2022 through December 5, 2022 neither SARA FERRERA, MD and TZVETAN NAYDENOV, MD ordered imaging of KHAYLA J. EVANS.

159.    On or about December 2, 2022 through December 5, 2022 neither SARA FERRERA, MD and TZVETAN NAYDENOV, MD obtained a complete history of KHAYLA J. EVANS.

160.    On or about December 5, 2022 SARA FERRERA, MD and/or TZVETAN NAYDENOV, MD discharged KHAYLA J. EVANS.

161.    On or about December 5, 2022, KHAYLA J. EVANS was transported back to Lake County Adult Corrections Facility after being discharged from VISTA EAST.

162.    On or about December 7, 2022 LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS was "lying on the floor with a diaper full of pee and shit" and that she must "change her own diaper."

163.    On or about December 7, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS could not hold pills and dropped them to the floor.

164.    On or about December 9, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS was experiencing an obvious medical emergency in that she was moaning all night and experiencing abdominal pain.

165.    On or about December 9, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS had been in the same position on a mat on the floor and had not moved.

166.    On or about December 9, 2022, KHAYLA J. EVANS again reported that she was experiencing stomach pain to LAKE COUNTY SHERIFF staff and/or WELLPATH staff.

167.    Employees and/or agents of LAKE COUNTY SHERIFF staff and/or WELLPATH staff, including but not limited to, Nurse Idalia Alvarez-Pinto, LPN Neva Abens, Nurse Taryn Weiler, and Officer Kelly Anderson #9455, were aware that KHAYLA J. EVANS was not moving, was moaning, and was experiencing pain consistent with an obvious medical emergency.

168.    Despite having knowledge that KHAYLA J. EVANS was not moving, was moaning, and was experiencing pain consistent with an obvious medical emergency, on or about

December 9, 2022, Nurse Taryn Weiler stated in Officer Kelly Anderson's presence that "we aren't doing anything for [her] because we don't believe anything she says."

169.     On or about December 9, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS continued to complain of stomach pain and was dehydrated.

170.     On or about December 9, 2022, KHAYLA J. EVANS was transported via ambulance from the Lake County Adult Corrections Facility to VISTA EAST.

171.     On or about December 9, 2022 through December 13, 2022, KHAYLA J. EVANS was evaluated by SHAHRUKH MALGHANI, MD, NEIL PULLER, MD and KENJI OYASU, MD.

172.     On or about December 9, 2022 through December 13, 2022, neither SHAHRUKH MALGHANI, MD, NEIL PULLER, MD nor KENJI OYASU, MD obtained a complete history of KHAYLA J. EVANS.

173.     On or about December 10, 2022, SHAHRUKH MALGHANI, MD ordered a CT of the Abdomen and Pelvis to be performed on KHAYLA J. EVANS.

174.     On or about December 10, 2022, a CT of the Abdomen performed on KHAYLA J. EVANS showed small infiltrate in the right lung base.

175.     The December 10, 2022 finding of small infiltrate in the right lung base was not investigated or followed up on by SHAHRUKH MALGHANI, MD or KENJI OYASU, MD.

176.     On or about December 13, 2022, NEIL PULLER, MD performed a lower extremity venous doppler examination on KHAYLA J. EVANS.

177.    The lower extremity venous doppler of KHAYLA J. EVANS performed by NEIL PULLER, MD was equivocal, in that the results were an incomplete visualization of the left popliteal vein in left posterior tibial vein.

178.    The December 13, 2022 results of an incomplete visualization of the left popliteal vein in left posterior tibial vein was not investigated or followed up on by SHAHRUKH MALGHANI, MD, KENJI OYASU, MD, or NEIL PULLER, MD.

179.    On or about December 13, 2022, SHAHRUKH MALGHANI, MD and/or KENJI OYASU discharged KHAYLA J. EVANS.

180.    On or about December 13, 2022, KHAYLA J. EVANS was transported back to Lake County Adult Corrections Facility after being discharged from VISTA EAST.

181.    On or about December 14, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff, had knowledge that KHAYLA J. EVANS was "screaming non-stop."

182.    Despite having knowledge that KHAYLA J. EVANS was "screaming non-stop," on or about December 14, 2022, an employee and/or agent of LAKE COUNTY SHERIFF and/or WELLPATH stated to Officer Jessica Rodriguez that "inmate is just seeking attention."

183.    Upon information and belief, one of the nurses assigned to KHAYLA J. EVANS on December 14, 2022 was Nurse Brittany Orduna-Santos.

184.    On or about December 15, 2022, LAKE COUNTY SHERIFF staff and/or WELLPATH staff had knowledge that KHAYLA J. EVANS could not hold pills and dropped them.

185.    On or about December 15, 2022, LAKE COUNTY SHERIFF, by and through Lieutenant Nicholas Kalfas, had knowledge that KHAYLA J. EVANS was no longer moving, eating, or drinking.

186.    That from December 5, 2022 through December 16, 2022, KHAYLA J. EVANS was seen by the following employees, agents, and/or servants of LAKE COUNTY SHERIFF and/or WELLPATH: Officer Jessica Rodriguez, Nurse Brittany Orduna-Santos, Officer Ana Becerra Reyes, Officer Krystle Reed, Officer Kelly Anderson, Officer Erica Landree, Officer Larisa Tate, Nurse Taryn Weiler, LPN Cecilia Cardona, "Nurse Ariane," Nurse Maria Tatro, Officer Lakiesha Gooden, Officer Loretta Onan, and Officer Sherry Raiman.

187.    On or about December 16, 2022, KHAYLA J. EVANS was found unresponsive in her cell.

188.    On or about December 16, 2022, KHAYLA J. EVANS suffered a cardiac arrest at the Lake County Adult Corrections Facility.

189.    On or about December 16, 2022, KHAYLA J. EVANS died.

190.    From July 1, 2022 through December 16, 2022, LAKE COUNTY SHERIFF contracted with WELLPATH to provide medical and mental health treatment to inmates at the Lake County Adult Corrections Facility.

191.    From July 1, 2022 through December 16, 2022, Defendants, Individually and by and through their employees, agents, and/or servants, showed deliberate indifference to serious and known medical conditions of KHAYLA J. EVANS.

192.    From July 1, 2022 through December 16, 2022, Defendants, Individually and by and through their employees, agents, and/or servants, showed deliberate indifference to serious and known mental health conditions of KHAYLA J. EVANS.

193.    That from July 1, 2022 through December 16, 2022 Defendants, Individually and by and through their employees, agents, and/or servants, knew that KHAYLA J. EVANS suffered from an intellectual disability and could not advocate for herself like a non-disabled peer.

194.     From July 1, 2022 through December 16, 2022, Defendants, Individually and by and through their employees, agents, and/or servants, failed to provide adequate medical and mental health care to KHAYLA J. EVANS.

195.     As a proximate result of the foregoing allegations, KHAYLA J. EVANS suffered pain and suffering, and ultimately death.

196.     This Court has authority pursuant to 42 U.S.C. § 1983 to award appropriate actual, consequential, compensatory and punitive damages, and has authority under 42 U.S.C. § 1988 to award attorneys fees and costs to a successful civil rights Plaintiffs.

197.     At all times relevant, there was in force and effect the Constitution of the United States which provided, in relevant part, as follows:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. Constitution of the United States, Amendment XIV.

198.     At all times relevant, there was in force and effect the Constitution of the United States which provided, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State…subjects, or causes to be subjected, any citizen of the United States…to deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. 42 U.S.C. § 1983.

199.     At all times relevant, there was in force and effect the Constitution of the United States which provided, in relevant part, as follows:

> Sheriff custodian of courthouse and jail. He or she shall have the custody and care of the courthouse and jail of his or her county, except as is otherwise provided. 55 ILCS 5/3-6017.
>
> * * *
>
> The Sheriff of each county in this State shall be the warden of the jail of the county, and have the custody of all prisoners in the jail, except when otherwise provided in the "County Department of Corrections Act".

The Sheriff may appoint a superintendent of the jail, and remove him at his pleasure, for whose conduct and training, he shall be responsible. The Sheriff shall also be responsible for the hiring and training of all personnel necessary to operate and maintain the jail. 730 ILCS 125/2 & 3.

\* \* \*

The Warden of the jail shall furnish necessary bedding, clothing, fuel, and medical services for all prisoners under his charge, and keep an accurate account of the same. 730 ILCS 125/17.

## CAUSES OF ACTION

### COUNT 1: DENIAL OF MEDICAL CARE
**Deprivation of Fourteenth Amendment Rights and 42 U.S.C. § 1983**
**(Lake County Sheriff, Lieutenant Nicholas Kalfas, Officer Pamela Castillo, Officer Larisa Tate, Officer Krystle Reed, Officer Kristin Debben, Officer Kelly Anderson, Officer Jessica Rodriguez, Lake County Sheriff's Officer CP#27107, Dr. Papanos, Nurse Ehlert-Donovan, Nurse Weiler, Nurse Reyes)**

200.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

201.    Defendants, LAKE COUNTY SHERIFF; LIEUTENANT NICHOLAS KALFAS; OFFICER PAMELA CASTILLO, OFFICER LARISA TATE; OFFICER KRYSTLE REED; OFFICER KRISTIN DEBBEN; OFFICER KELLY ANDERSON; OFFICER JESSICA RODRIGUEZ; LAKE COUNTY SHERIFF'S OFFICER CP#27107; NICHOLAS PAPANOS, MD; KERRY EHLERT-DONOVAN, LPN; TARYN WEILER, RN; and CONSUELO REYES, RN (hereinafter referred to as "Defendants") each of them, had a duty to take reasonable measures in response to the obvious serious medical need and risk posed by KHAYLA J. EVANS' condition.

202.    Defendants, each of them, were aware that KHAYLA J. EVANS' condition began to deteriorate, and yet took no action to provide or request medical care for KHAYLA J. EVANS, disregarding obvious risks to her health.

203.    That the conduct and actions of Defendants, each of them, acting under color of law, in failing to request or obtain medical attention for KHAYLA J. EVANS was unreasonable,

27

was done intentionally, willfully, wantonly, maliciously, with a deliberate indifference and/or with a reckless disregard for her serious medical needs, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of KHAYLA J. EVANS' substantive due process rights as guaranteed by 42. U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

204.    Defendants, each of them, were acting under color of law when they deprived KHAYLA J. EVANS of such substantive due process rights secured by 42. U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

205.    Defendants, each of them, knew that KHAYLA J. EVANS faced a substantial risk of harm, and disregarded that risk by failing to take reasonable measures to abate it.

206.    As a direct and proximate result of the foregoing, KHAYLA J. EVANS was subjected to great physical and emotional pain and suffering, and ultimately death.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 2:    *MONELL* CLAIM
### 42 U.S.C. § 1983
### (Lake County Sheriff)

207.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

208.    Defendant LAKE COUNTY SHERIFF directly caused the constitutional violations suffered by KHAYLA J. EVANS and is liable for the damages suffered as a result of the conduct of the Defendant employees and/or agents of Defendant LAKE COUNTY SHERIFF.

209.    Defendant LAKE COUNTY SHERIFF is responsible for having and following policies, practices, customs, and usages that assure that pretrial detainees and inmates at the Lake County Adult Corrections Facility received adequate attention and treatment. Defendant LAKE COUNTY SHERIFF maintains final policymaking authority over the custody, care, and medical services available to pretrial detainees and inmates at the Lake County Adult Corrections Facility.

210.    The conduct of the Defendant employees and/or agents was a direct consequence of policies and practices of Defendant LAKE COUNTY SHERIFF.

211.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages of encouraging jail staff to ignore obvious signs of medical distress involving individuals detained in its custody.

212.    At all times relevant, Defendant LAKE COUNTY SHERIFF, had policies, practices, customs, and usages which refused to properly staff jail units.

213.    At all times relevant, Defendant LAKE COUNTY SHERIFFhad policies, practices, customs, and usages which refused to properly train, monitor, supervise or ensure staff and/or agents or utilize proper protocols concerning summoning medical personnel to assist with obvious serious medical needs.

214.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages which, in an effort to reduce costs, discouraged jail staff and Defendants from providing, requesting, or summoning the appropriate medical personnel, even during times of serious medical distress. This fails to discourage constitutional violations.

215.    At all times relevant, Defendant LAKE COUNTY SHERIFF, had policies, practices, customs, and usages which discouraged jail staff and Defendants from advocating for the medical needs of KHAYLA J. EVANS despite her display of obvious serious medical distress

29

and even when jail staff and Defendants were aware that staff was not "doing anything for [KHAYLA J. EVANS] because we don't believe anything she says."

216.    At all times relevant, Defendant LAKE COUNTY SHERIFF, had policies, practices, customs, and usages requiring confiscation of bona fide prescription medications upon a person's booking in jail, without regard to whether or not the prescription was necessary to prevent obvious serious medical distress.

217.    As a result of the above-described policies and customs, jail staff and the Defendants believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated by the LAKE COUNTY SHERIFF.

218.    The above-described policies and customs were persistent and widespread, such that LAKE COUNTY SHERIFF knew of such polices and customs and allowed them to continue.

219.    The wrongful polices, practices, customs, and usages complained of herein demonstrated a deliberate indifference on the part of the Defendant LAKE SHERIFF to the constitutional rights of persons needing medical care in its jail facility, and were the direct and proximate cause of the violations of KHAYLA J. EVANS's rights alleged herein.

220.    The wrongful polices, practices, customs, and usages complained of herein demonstrated a deliberate indifference on the part of the Defendant LAKE COUNTY SHERIFF to KHAYLA J. EVANS' medical and psychiatric complaints.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

**COUNT 3:** *MONELL* **CLAIM**
**42 U.S.C. § 1983**
**(WellPath, LLC)**

221.     Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

222.     Defendant WELLPATH, LLC ("WELLPATH") directly caused the constitutional violations suffered by KHAYLA J. EVANS and is liable for the damages suffered as a result of the conduct of the Defendant employees and/or agents of Defendant WELLPATH.

223.     The conduct of the Defendant employees and/or agents was a direct consequence of policies and practices of Defendant WELLPATH.

224.     At all times relevant, Defendant WELLPATH, acting through its employees and/or agents and through the Defendants had policies, practices, customs, and usages of encouraging staff to ignore obvious signs of medical distress involving individuals detained in its custody.

225.     At all times relevant, Defendant WELLPATH, acting through its employees and/or agents and through the Defendants had policies, practices, customs, and usages which refused to properly staff jail units.

226.     At all times relevant, Defendant WELLPATH, acting through its employees and/or agents and through the Defendants had policies, practices, customs, and usages which refused to properly train, monitor, supervise or ensure staff and/or agents or utilize a proper protocols concerning summoning medical personnel to assist with an obvious serious medical need.

227.     At all times relevant, Defendant WELLPATH, acting through its employees and/or agents and through the Defendants had policies, practices, customs, and usages which, in an effort to reduce costs, discouraged jail staff and Defendants from providing, requesting, or summoning

the appropriate medical personnel, even during times of serious medical distress. This fails to discourage constitutional violations.

228.    At all times relevant, Defendant WELLPATH, acting through its employees and/or agents and through the Defendants had policies, practices, customs, and usages which discouraged jail staff and Defendants from advocating for the medical needs of KHAYLA J. EVANS despite her display of obvious serious in that employees and Defendants of WELLPATH decided "we aren't doing anything for [KHAYLA J. EVANS] because we don't believe anything she says."

229.    At all times relevant, Defendant WELLPATH, acting through its employees and/or agents and through the Defendants had policies, practices, customs, and usages requiring confiscation of bona fide prescription medications upon a person's booking in jail, without regard to whether or not the prescription was necessary to prevent obvious serious medical distress.

230.    As a result of the above described policies and customs, jail staff and the Defendants believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

231.    The above-described policies and customs were persistent and widespread, such that WELLPATH knew of such polices and customs and allowed them to continue.

232.    The wrongful polices, practices, customs, and usages complained of herein demonstrated a deliberate indifference on the part of the Defendant WELLPATH, to the constitutional rights of persons needing medical care in its jail facility, and were the direct and proximate cause of the violations of KHAYLA J. EVANS's rights alleged herein.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages,

compensatory damages, punitive damages, attorney's fees, costs, and all other just and proper relief.

<u>COUNT 4:     INSTITUTIONAL NEGLIGENCE</u>
**Illinois State Law**
**(Lake County Sheriff)**

233.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

234.    At all times relevant, Defendant LAKE COUNTY SHERIFF was treated as the Lake County Adult Corrections Facility itself. LAKE COUNTY SHERIFF controlled the institution primarily responsible for the medical care and appropriate treatment of detainees housed at the Lake County Adult Corrections Facility.

235.    Defendant LAKE COUNTY SHERIFF had a duty to supervise and ensure that medical care and appropriate treatment was provided in a timely and safe manner by their employees and/or agents at the jail.

236.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages of encouraging jail staff to ignore obvious signs of medical distress involving individuals detained in its custody.

237.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages which refused to properly staff jail units.

238.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages which refused to properly train, monitor, supervise or ensure staff and/or agents or utilize a proper protocols concerning summoning medical personnel to assist with an obvious serious medical need.

239.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages which, in an effort to reduce costs, discouraged jail staff and Defendants from providing, requesting, or summoning the appropriate medical personnel, even during times of serious medical distress. This fails to discourage constitutional violations.

240.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages which discouraged jail staff and Defendants from advocating for the medical needs of KHAYLA J. EVANS despite her display of obvious serious medical distress and even when jail staff and Defendants were aware that "we aren't doing anything for [KHAYLA J. EVANS] because we don't believe anything she says."

241.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages which deliberately, willfully, wantonly, and intentionally ignored inmate medical needs, concerns, and emergencies with an utter indifference to or conscious disregard for their safety.

242.    At all times relevant, Defendant LAKE COUNTY SHERIFF had policies, practices, customs, and usages requiring confiscation of bona fide prescription medications upon a person's booking in jail, without regard to whether or not the prescription was necessary to prevent obvious serious medical distress.

243.    As a result of the above-described policies and customs, jail staff and the Defendants believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated by the LAKE COUNTY SHERIFF.

244.    The wrongful polices, practices, customs, and usages complained of herein on the part of Defendant LAKE COUNTY SHERIFF created an unreasonably unsafe environment for

inmates with health concerns, and were the direct and proximate cause of KHAYLA J. EVANS' injuries and death.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

**COUNT 5:    WILLFUL AND WANTON**
**Illinois State Law**
**(Lake County Sheriff)**

245.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

246.     At all times relevant, Defendant LAKE COUNTY SHERIFF was treated as the Lake County Adult Corrections Facility itself. LAKE COUNTY SHERIFF controlled the institution primarily responsible for the medical care and appropriate treatment of detainees housed at the Lake County Adult Corrections Facility.

247.    Defendant LAKE COUNTY SHERIFF had a duty to supervise and ensure that medical care and appropriate treatment was provided in a timely and safe manner by their employees and/or agents at the jail.

248.    At all times relevant, Defendant LAKE COUNTY SHERIFF, acting through its employees and/or agents and through the Defendants had policies, practices, customs, and usages which deliberately, willfully, wantonly, and intentionally ignored detainees medical needs, concerns, and emergencies with an utter indifference to or conscious disregard for their safety.

249.    At all times relevant, Defendant LAKE COUNTY SHERIFF had a duty to refrain from willful and wanton misconduct in the supervision of medical care and appropriate treatment in a timely and safe manner by their employees and/or agents at the jail.

250.    At all times relevant, Defendant LAKE COUNTY SHERIFF acted with a conscious disregard or indifference to the safety of others was guilty of willful and wanton misconduct in one or more of the following respects:

    a.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others, failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to perform an adequate work-up of KHAYLA J. EVANS;

    c.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to timely transport KHAYLA J. EVANS to a hospital;

    e.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

    f.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately treat the condition of KHAYLA J. EVANS.

251.    As a direct and proximate result of one or more of the aforesaid acts and/or omissions by Defendant, LAKE COUNTY SHERIFF, KHAYLA J. EVANS died on December 16, 2022.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

## COUNT 6:    INSTITUTIONAL NEGLIGENCE
### Illinois State Law
### (WellPath, LLC)

252.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

253.    At all times relevant, Defendant WELLPATH, LLC was an institution primarily responsible for the medical care and appropriate treatment of detainees housed at the Lake County Adult Corrections Facility.

254.    Defendant WELLPATH, LLC had a duty to supervise and ensure that medical care and appropriate treatment was provided in a timely and safe manner by their employees and/or agents at the jail.

255.    At all times relevant, Defendant WELLPATH, LLC, had policies, practices, customs, and usages of encouraging jail staff to ignore obvious signs of medical distress involving individuals detained in its custody.

256.    At all times relevant, Defendant WELLPATH, LLC had policies, practices, customs, and usages which refused to properly staff jail units.

257.    At all times relevant, Defendant WELLPATH, LLC had policies, practices, customs, and usages which refused to properly train, monitor, supervise or ensure staff and/or agents or utilize a proper protocols concerning summoning medical personnel to assist with an obvious serious medical need.

258.    At all times relevant, Defendant WELLPATH, LLC had policies, practices, customs, and usages which, in an effort to reduce costs, discouraged jail staff and Defendants from providing, requesting, or summoning the appropriate medical personnel, even during times of serious medical distress. This fails to discourage constitutional violations.

259.    At all times relevant, Defendant WELLPATH, LLC had policies, practices, customs, and usages which discouraged jail staff and Defendants from advocating for the medical needs of KHAYLA J. EVANS despite her display of obvious serious in that employees and

Defendants of WELLPATH, LLC decided "we aren't doing anything for [KHAYLA J. EVANS] because we don't believe anything she says."

260.     At all times relevant, Defendant WELLPATH, LLC had policies, practices, customs, and usages requiring confiscation of bona fide prescription medications upon a person's booking in jail, without regard to whether or not the prescription was necessary to prevent obvious serious medical distress.

261.     As a result of the above-described policies and customs, jail staff and the Defendants believed that their actions and/or inaction would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

262.     The wrongful polices, practices, customs, and usages complained of herein on the part of Defendant WELLPATH, LLC created an unreasonably unsafe environment for inmates with health concerns and were the direct and proximate cause of KHAYLA J. EVANS' injuries and death.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 7:     WRONGFUL DEATH – MEDICAL NEGLIGENCE
**Illinois State Law**
**(Lake County Sheriff,**
**Dr. Papanos, LPN Ehlert-Donovan, Nurse Weiler, Nurse Reyes)**

263.     Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

264.    At all times relevant, Defendant LAKE COUNTY SHERIFF had a duty to comply with the standards imposed by law, by public regulation, and by self-regulation under circumstances similar to those involving the care and treatment of KHAYLA J. EVANS.

265.    At all times relevant, Defendant NICHOLAS PAPANOS, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

266.    At all times relevant, Defendant KERRY EHLERT-DONOVAN, LPN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful licensed practical nurse would use under the same or similar circumstances.

267.    At all times relevant, Defendant TARYN WEILER, RN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful nurse would use under the same or similar circumstances.

268.    At all times relevant, Defendant CONSUELO REYES, RN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful nurse would use under the same or similar circumstances.

269.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant LAKE COUNTY SHERIFF, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful correctional healthcare provider would use under the same or similar circumstances.

270. That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant LAKE COUNTY SHERIFF, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, breached that duty and was negligent in one or more of the following respects:

    a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.   Failed to perform an adequate work-up of KHAYLA J. EVANS;

    c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Failed to timely transport KHAYLA J. EVANS to a hospital;

    e.   Failed to adequately monitor the condition of KHAYLA J. EVANS;

    f.   Failed to adequately treat the condition of KHAYLA J. EVANS.

271. That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant NICHOLAS PAPANOS, MD, breached his duty and was negligent in one or more of the following respects:

    a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.   Failed to perform an adequate work-up of KHAYLA J. EVANS;

    c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Failed to timely transport KHAYLA J. EVANS to a hospital;

    e.   Failed to adequately monitor the condition of KHAYLA J. EVANS;

    f.   Failed to adequately treat the condition of KHAYLA J. EVANS.

272.     That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant KERRY EHLERT-DONOVAN, LPN, breached her duty and was negligent in one or more of the following respects:

      a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

      b.   Failed to perform an adequate work-up of KHAYLA J. EVANS;

      c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

      d.   Failed to timely transport KHAYLA J. EVANS to a hospital;

      e.   Failed to adequately monitor the condition of KHAYLA J. EVANS;

      f.   Failed to adequately treat the condition of KHAYLA J. EVANS.

273.     That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant TARYN WEILER, RN breached her duty and was negligent in one or more of the following respects:

      a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

      b.   Failed to perform an adequate work-up of KHAYLA J. EVANS;

      c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

      d.   Failed to timely transport KHAYLA J. EVANS to a hospital;

      e.   Failed to adequately monitor the condition of KHAYLA J. EVANS;

      f.   Failed to adequately treat the condition of KHAYLA J. EVANS.

274.     That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant CONSUELO REYES, RN breached her duty and was negligent in one or more of the following respects:

      a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

      b.   Failed to perform an adequate work-up of KHAYLA J. EVANS;

    c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Failed to timely transport KHAYLA J. EVANS to a hospital;

    e.   Failed to adequately monitor the condition of KHAYLA J. EVANS;

    f.   Failed to adequately treat the condition of KHAYLA J. EVANS.

275.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, LAKE COUNTY SHERIFF, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, KHAYLA J. EVANS died on December 16, 2022.

276.    As a direct and proximate result of the foregoing deviations from the standard of care above by Defendant NICHOLAS PAPANOS, MD, KHAYLA J. EVANS died on December 16, 2022.

277.    As a direct and proximate result of the foregoing deviations from the standard of care above by Defendant KERRY EHLERT-DONOVAN, LPN, KHAYLA J. EVANS died on December 16, 2022.

278.    As a direct and proximate result of the foregoing deviations from the standard of care above by Defendant TARYN WEILER, RN, KHAYLA J. EVANS died on December 16, 2022.

279.    As a direct and proximate result of the foregoing deviations from the standard of care above by Defendant CONSUELO REYES, RN, KHAYLA J. EVANS died on December 16, 2022.

280.     As a result of KHAYLA J. EVANS' death, her parents, KENNETH EVANS and KENYA EVANS have suffered loss of society and have experienced grief, sorrow, and mental anguish.

281.     KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 740 ILCS 180/1, 180/2, and 180/2.1, commonly referred to as the Wrongful Death Act.

282.     Attached hereto as **Exhibit A** is a copy of the letters of office appointing KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased.

283.     Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 8:     WRONGFUL DEATH – WILLFUL AND WANTON
### Illinois State Law
### (Lake County Sheriff,
### Dr. Papanos, LPN Ehlert-Donovan, Nurse Weiler, Nurse Reyes)

284.     Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

285.     At all times relevant, Defendant LAKE COUNTY SHERIFF had a duty to comply with the standards imposed by law, by public regulation, and by self-regulation under circumstances similar to those involving the care and treatment of KHAYLA J. EVANS.

286.     At all times relevant, Defendant LAKE COUNTY SHERIFF had a duty to refrain from willful and wanton misconduct in the compliance with the standards imposed by law, by

public regulation, and by self-regulation under circumstances similar to those involving the care and treatment of KHAYLA J. EVANS.

287.    At all times relevant, Defendant NICHOLAS PAPANOS, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

288.    At all times relevant, Defendant KERRY EHLERT-DONOVAN, LPN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful licensed practical nurse would use under the same or similar circumstances.

289.    At all times relevant, Defendant TARYN WEILER, RN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful nurse would use under the same or similar circumstances.

290.    At all times relevant, Defendant CONSUELO REYES, RN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful nurse would use under the same or similar circumstances.

291.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant LAKE COUNTY SHERIFF, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful correctional healthcare provider would use under the same or similar circumstances.

292.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant LAKE COUNTY SHERIFF, by

and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, breached that duty and with a conscious disregard or indifference to the safety of others was guilty of willful and wanton misconduct in one or more of the following respects:

     a.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others, failed to appropriately assess the condition of KHAYLA J. EVANS;

     b.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to perform an adequate work-up of KHAYLA J. EVANS;

     c.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

     d.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to timely transport KHAYLA J. EVANS to a hospital;

     e.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

     f.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately treat the condition of KHAYLA J. EVANS.

293.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant NICHOLAS PAPANOS, MD, breached his duty and with a conscious disregard or indifference to the safety of others was guilty of willful and wanton misconduct in one or more of the following respects:

     a.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others, failed to appropriately assess the condition of KHAYLA J. EVANS;

     b.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to perform an adequate work-up of KHAYLA J. EVANS;

     c.  Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to timely transport KHAYLA J. EVANS to a hospital;

    e.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

    f.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately treat the condition of KHAYLA J. EVANS.

294.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant KERRY EHLERT-DONOVAN, LPN, breached her duty and with a conscious disregard or indifference to the safety of others was guilty of willful and wanton misconduct in one or more of the following respects:

    a.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others, failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to perform an adequate work-up of KHAYLA J. EVANS;

    c.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to timely transport KHAYLA J. EVANS to a hospital;

    e.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

    f.   Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately treat the condition of KHAYLA J. EVANS.

295.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant TARYN WEILER, RN breached her duty and with a conscious disregard or indifference to the safety of others was guilty of willful and wanton misconduct in one or more of the following respects:

a. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others, failed to appropriately assess the condition of KHAYLA J. EVANS;

b. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to perform an adequate work-up of KHAYLA J. EVANS;

c. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

d. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to timely transport KHAYLA J. EVANS to a hospital;

e. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

f. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately treat the condition of KHAYLA J. EVANS.

296.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant CONSUELO REYES, RN breached her duty and with a conscious disregard or indifference to the safety of others was guilty of willful and wanton misconduct in one or more of the following respects:

a. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others, failed to appropriately assess the condition of KHAYLA J. EVANS;

b. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to perform an adequate work-up of KHAYLA J. EVANS;

c. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

d. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to timely transport KHAYLA J. EVANS to a hospital;

e. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

f. Knowingly, intentionally and with a conscious and reckless disregard for the safety of others failed to adequately treat the condition of KHAYLA J. EVANS.

297.    As a direct and proximate result of one or more of the aforesaid acts and/or omissions by Defendant, LAKE COUNTY SHERIFF, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, KHAYLA J. EVANS died on December 16, 2022.

298.    As a direct and proximate result of one or more of the aforesaid acts and/or omissions by Defendant, NICHOLAS PAPANOS, MD, KHAYLA J. EVANS died on December 16, 2022.

299.    As a direct and proximate result of one or more of the aforesaid acts and/or omissions by Defendant KERRY EHLERT-DONOVAN, LPN, KHAYLA J. EVANS died on December 16, 2022.

300.    As a direct and proximate result of one or more of the aforesaid acts and/or omissions by Defendant TARYN WEILER, RN, KHAYLA J. EVANS died on December 16, 2022.

301.    As a direct and proximate result of one or more of the aforesaid acts and/or omissions by Defendant CONSUELO REYES, RN, KHAYLA J. EVANS died on December 16, 2022.

302.    As a result of KHAYLA J. EVANS' death, her parents, KENNETH EVANS and KENYA EVANS have suffered loss of society and have experienced grief, sorrow, and mental anguish.

303.    KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 740 ILCS 180/1, 180/2, and 180/2.1, commonly referred to as the Wrongful Death Act.

304.    Attached hereto as **Exhibit A** is a copy of the letters of office appointing KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased.

305.    Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 9:    SURVIVAL ACTION – MEDICAL NEGLIGENCE
**Illinois State Law**
**(Lake County Sheriff,**
**Dr. Papanos, Nurse Ehlert-Donovan, Nurse Weiler, Nurse Reyes)**

306.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

307.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 8 by Defendant, LAKE COUNTY SHERIFF, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

308.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 8 by Defendant, NICHOLAS PAPANOS, MD, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

309.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 8 by Defendant, KERRY EHLERT DONOVAN, LPN, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

310.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 8 by Defendant, TARYN WEILER, RN, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

311.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 8 by Defendant, CONSUELO REYES, RN, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

312.    KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Act.  (*See* **Exhibit A**).

313.    Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 10:   WRONGFUL DEATH – MEDICAL NEGLIGENCE
**Illinois State Law**
**(WellPath, Dr. Papanos, LPN Ehlert-Donovan, Nurse Weiler, Nurse Reyes)**

314.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

315.    At all times relevant, WELLPATH had a duty to comply with the standards imposed by law, by public regulation, and by self-regulation under circumstances similar to those involving the care and treatment of KHAYLA J. EVANS.

316.    At all times relevant, Defendant NICHOLAS PAPANOS, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

317.    At all times relevant, Defendant KERRY EHLERT-DONOVAN, LPN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful licensed practical nurse would use under the same or similar circumstances.

318.    At all times relevant, Defendant TARYN WEILER, RN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful nurse would use under the same or similar circumstances.

319.    At all times relevant, Defendant CONSUELO REYES, RN had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful nurse would use under the same or similar circumstances.

320.    At all times relevant, WELLPATH, as a corporate medical contractor, owed a duty to KHAYLA J. EVANS, as a patient at the contracted facility, to exercise ordinary and reasonable care, including to properly approve and arrange for medical care.

321.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant WELLPATH, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS,

51

MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful correctional healthcare provider would use under the same or similar circumstances.

322. That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant WELLPATH, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, breached that duty and was negligent in one or more of the following respects:

    a. Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b. Failed to perform an adequate work-up of KHAYLA J. EVANS;

    c. Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d. Failed to timely transport KHAYLA J. EVANS to a hospital;

    e. Failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

    f. Failed to adequately treat the condition of KHAYLA J. EVANS.

323. That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant NICHOLAS PAPANOS, MD, breached his duty and was negligent in one or more of the following respects:

    a. Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b. Failed to perform an adequate work-up of KHAYLA J. EVANS;

    c. Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d. Failed to timely transport KHAYLA J. EVANS to a hospital;

    e. Failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

    f. Failed to adequately treat the condition of KHAYLA J. EVANS.

324.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant KERRY EHLERT-DONOVAN, LPN, breached her duty and was negligent in one or more of the following respects:

    a.    Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.    Failed to perform an adequate work-up of KHAYLA J. EVANS;

    c.    Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.    Failed to timely transport KHAYLA J. EVANS to a hospital;

    e.    Failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

    f.    Failed to adequately treat the condition of KHAYLA J. EVANS.

325.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant TARYN WEILER, RN breached her duty and was negligent in one or more of the following respects:

    a.    Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.    Failed to perform an adequate work-up of KHAYLA J. EVANS;

    c.    Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.    Failed to timely transport KHAYLA J. EVANS to a hospital;

    e.    Failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

    f.    Failed to adequately treat the condition of KHAYLA J. EVANS.

326.    That from July 1, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant CONSUELO REYES, RN breached her duty and was negligent in one or more of the following respects:

    a.    Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.    Failed to perform an adequate work-up of KHAYLA J. EVANS;

c.  Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

d.  Failed to timely transport KHAYLA J. EVANS to a hospital;

e.  Failed to adequately monitor the condition of KHAYLA J. EVANS; and/or

f.  Failed to adequately treat the condition of KHAYLA J. EVANS.

327.  As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, WELLPATH, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, KHAYLA J. EVANS died on December 16, 2022.

328.  As a direct and proximate result of the foregoing deviations from the standard of care above by Defendant NICHOLAS PAPANOS, MD, KHAYLA J. EVANS died on December 16, 2022.

329.  As a direct and proximate result of the foregoing deviations from the standard of care above by Defendant KERRY EHLERT-DONOVAN, LPN, KHAYLA J. EVANS died on December 16, 2022.

330.  As a direct and proximate result of the foregoing deviations from the standard of care above by Defendant TARYN WEILER, RN, KHAYLA J. EVANS died on December 16, 2022.

331.  As a direct and proximate result of the foregoing deviations from the standard of care above by Defendant CONSUELO REYES, RN, KHAYLA J. EVANS died on December 16, 2022.

332.    As a result of KHAYLA J. EVANS' death, her parents, KENNETH EVANS and KENYA EVANS have suffered loss of society and have experienced grief, sorrow, and mental anguish.

333.    KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 740 ILCS 180/1, 180/2, and 180/2.1, commonly referred to as the Wrongful Death Act.

334.    Attached hereto as **Exhibit A** is a copy of the letters of office appointing KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased.

335.    Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 11:   SURVIVAL ACTION – MEDICAL NEGLIGENCE
### Illinois State Law
### (WellPath, Dr. Papanos, Nurse Ehlert-Donovan, Nurse Weiler, Nurse Reyes)

336.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

337.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 10 by Defendant, WELLPATH, by and through its employees, agents, and/or apparent agents, including but not limited to NICHOLAS PAPANOS, MD, KERRY EHLERT-DONOVAN, LPN, TARYN WEILER, RN, and CONSUELO REYES, RN, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress

and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

338.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 10 by Defendant, NICHOLAS PAPANOS, MD, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

339.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 10 by Defendant, KERRY EHLERT DONOVAN, LPN, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

340.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 10 by Defendant, TARYN WEILER, RN, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

341.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 10 by Defendant, CONSUELO REYES, RN, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

342.    KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Act.  (*See* **Exhibit A**).

343.     Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

<u>COUNT 12:   WRONGFUL DEATH – MEDICAL NEGLIGENCE</u><br>
<b>Illinois State Law</b><br>
<b>(Waukegan Illinois Hospital Company, LLC d/b/a Vista Medical Center East, Dr. Barker, Dr. Ferrera, Dr. Malghani, Dr. Puller, Dr. Naydenov, Dr. Oyasu)</b>

344.     Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

345.     At all times relevant, Defendant JARROD BARKER, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

346.     At all times relevant, Defendant SARA FERRERA, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

347.     At all times relevant, Defendant SHAHRUKH MALGHANI, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

348.     At all times relevant, Defendant NEIL PULLER, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

349.    At all times relevant, Defendant TZVETAN NAYDENOV, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

350.    At all times relevant, Defendant KENJI OYASU, MD had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

351.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant VISTA EAST, as an Institution and by and through its employees, agents, and/or apparent agents, including but not limited to, nurses, physician extenders, physicians, JARROD BARKER, MD, SARA FERRERA, MD, SHAHRUKH MALGHANI, MD, NEIL PULLER, MD, TZVETAN NAYDENOV, MD, and KENJI OYASU had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful healthcare provider would use under the same or similar circumstances.

352.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant VISTA EAST, as an Institution and by and through its employees, agents, and/or apparent agents, including but not limited to, nurses, physician extenders, physicians, JARROD BARKER, MD, SARA FERRERA, MD, SHAHRUKH MALGHANI, MD, NEIL PULLER, MD, TZVETAN NAYDENOV, MD, and KENJI OYASU breached that duty and was negligent in one or more of the following respects:

    a.  Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.  Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

    c.  Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.  Failed to admit and/or keep KHAYLA J. EVANS admitted for further treatment;

     e.   Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

     f.   Failed to adequately treat the conditions of KHAYLA J. EVANS.

353.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant JARROD BARKER, MD, breached his duty and was negligent in one or more of the following respects:

     a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

     b.   Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

     c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

     d.   Failed to admit and/or keep KHAYLA J. EVANS admitted for further treatment;

     e.   Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

     f.   Failed to adequately treat the conditions of KHAYLA J. EVANS.

354.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant SARA FERRERA, MD, breached her duty and was negligent in one or more of the following respects:

     a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

     b.   Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

     c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

     d.   Failed to admit and/or keep KHAYLA J. EVANS admitted for further treatment;

     e.   Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

     f.   Failed to adequately treat the conditions of KHAYLA J. EVANS.

355.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant SHAHRUKH MALGHANI, MD breached his duty and was negligent in one or more of the following respects:

    a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.   Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

    c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Failed to admit and/or keep KHAYLA J. EVANS admitted for further treatment;

    a.   Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

    b.   Failed to adequately treat the conditions of KHAYLA J. EVANS.

356.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant NEIL PULLER, MD, breached his duty and was negligent in one or more of the following respects:

    a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.   Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

    c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Failed to admit and/or keep KHAYLA J. EVANS admitted for further treatment;

    e.   Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

    f.   Failed to adequately treat the conditions of KHAYLA J. EVANS.

357.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant TZVETAN NAYDENOV, MD, breached his duty and was negligent in one or more of the following respects:

    a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.   Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

    c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Failed to admit and/or keep KHAYLA J. EVANS admitted for further treatment;

    e.   Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

      f.   Failed to adequately treat the conditions of KHAYLA J. EVANS.

358.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant KENJI OYASU, MD, breached his duty and was negligent in one or more of the following respects:

      a.   Failed to appropriately assess the condition of KHAYLA J. EVANS;

      b.   Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

      c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

      d.   Failed to admit and/or keep KHAYLA J. EVANS admitted for further treatment;

      e.   Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

      f.   Failed to adequately treat the conditions of KHAYLA J. EVANS.

359.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, VISTA EAST, as an Institution and by and through its employees, agents, and/or apparent agents, including but not limited to JARROD BARKER, MD, SARA FERRERA, MD, SHAHRUKH MALGHANI, MD, NEIL PULLER, MD, TZVETAN NAYDENOV, MD, and KENJI OYASU, KHAYLA J. EVANS died on December 16, 2022.

360.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, JARROD BARKER, MD died on December 16, 2022.

361.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, SARA FERRERA, MD, KHAYLA J. EVANS died on December 16, 2022.

362.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, SHAHRUKH MALGHANI, MD died on December 16, 2022.

363.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, NEIL PULLER, MD died on December 16, 2022.

364.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, TZVETAN NAYDENOV, MD died on December 16, 2022.

365.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, KENJI OYASU, MD died on December 16, 2022.

366.    As a result of KHAYLA J. EVANS' death, her parents, KENNETH EVANS and KENYA EVANS have suffered loss of society and have experienced grief, sorrow, and mental anguish.

367.    KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 740 ILCS 180/1, 180/2, and 180/2.1, commonly referred to as the Wrongful Death Act.

368.    Attached hereto as **Exhibit A** is a copy of the letters of office appointing KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased.

369.    Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 13:   SURVIVAL ACTION – MEDICAL NEGLIGENCE
**Illinois State Law**
**(Waukegan Illinois Hospital Company, LLC d/b/a Vista Medical Center East, Dr. Barker, Dr. Ferrera, Dr. Malghani, Dr. Puller, Dr. Naydenov, Dr. Oyasu)**

370.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

371.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 12 by Defendant, VISTA EAST, as an Institution and by and through its employees, agents, and/or apparent agents, including but not limited to, nurses, physician extenders, physicians, JARROD BARKER, MD, SARA FERRERA, MD, SHAHRUKH MALGHANI, MD, NEIL PULLER, MD, TZVETAN NAYDENOV, MD, and KENJI OYASU, MD, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

372.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 12 by Defendant, JARROD BARKER, MD, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

373.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 12 by Defendant, SARA FERRERA, MD, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

374.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 12 by Defendant, SHAHRUKH MALGHANI, MD, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

375.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 12 by Defendant, NEIL PULLER, MD, KHAYLA J. EVANS experienced conscious

pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

376.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 12 by Defendant, TZVETAN NAYDEVOV, MD, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

377.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 12 by Defendant, KENJI OYASU, MD, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

378.    KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Act.  (*See* **Exhibit A**).

379.    Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 14:   WRONGFUL DEATH – MEDICAL NEGLIGENCE
**Illinois State Law**
**(American Physician Partners, LLC, Dr. Naydenov, Dr. Oyasu)**

380.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

381.    At all times relevant, Defendant TZVETAN NAYDENOV, MD, as an employee, agent, and/or apparent agent of AMERICAN PHYSICIAN PARTNERS, LLC had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

382.    At all times relevant, Defendant KENJI OYASU, MD, as an employee, agent, and/or apparent agent of AMERICAN PHYSICIAN PARTNERS, LLC had a duty to possess and apply the knowledge and use the skill and care which a reasonably careful physician would use under the same or similar circumstances.

383.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant TZVETAN NAYDENOV, MD, as an employee, agent, and/or apparent agent of AMERICAN PHYSICIAN PARTNERS, LLC, breached that duty and was negligent in one or more of the following respects:

    a.    Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.    Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

    c.    Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    a.    Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

    b.    Failed to adequately treat the conditions of KHAYLA J. EVANS.

384.    That from November 23, 2022 through December 16, 2022, and at all times relevant, while providing medical services to KHAYLA J. EVANS, Defendant KENJI OYASU, MD, as an employee, agent, and/or apparent agent of AMERICAN PHYSICIAN PARTNERS, LLC, breached that duty and was negligent in one or more of the following respects:

    a.    Failed to appropriately assess the condition of KHAYLA J. EVANS;

    b.    Failed to perform an adequate work-up of KHAYLA J. EVANS' altered status;

    c.   Failed to order appropriate diagnostic testing and imaging of KHAYLA J. EVANS;

    d.   Failed to ascertain an appropriate history of KHAYLA J. EVANS; and/or

    e.   Failed to adequately treat the conditions of KHAYLA J. EVANS.

385.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, TZVETAN NAYDENOV, MD, as an employee, agent, and/or apparent agent of AMERICAN PHYSICIAN PARTNERS, LLC, KHAYLA J. EVANS died on December 16, 2022.

386.    As a direct and proximate result of the foregoing deviations from the standard of care by Defendant, KENJI OYASU, MD, as an employee, agent, and/or apparent agent of AMERICAN PHYSICIAN PARTNERS, LLC, KHAYLA J. EVANS died on December 16, 2022.

387.    As a result of KHAYLA J. EVANS' death, her parents, KENNETH EVANS and KENYA EVANS have suffered loss of society and have experienced grief, sorrow, and mental anguish.

388.    KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 740 ILCS 180/1, 180/2, and 180/2.1, commonly referred to as the Wrongful Death Act.

389.    Attached hereto as **Exhibit A** is a copy of the letters of office appointing KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased.

390.    Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 15:   SURVIVAL ACTION – MEDICAL NEGLIGENCE
### Illinois State Law
### (American Physician Partners, LLC Dr. Naydenov, Dr. Oyasu)

391.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

392.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 14 by Defendant, TZVETAN NAYDENOV, MD, as an employee, agent, and/or apparent agent of AMERICAN PHYSICIAN PARTNERS, LLC, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

393.    As a direct and proximate result of the foregoing deviations from the standard of care in Count 14 by Defendant, KENJI OYASU, MD, as an employee, agent, and/or apparent agent of AMERICAN PHYSICIAN PARTNERS, LLC, KHAYLA J. EVANS experienced conscious pain and suffering, disability, loss of a normal life, and emotional distress and incurred medical expenses for which she would have been entitled to recover as damages had she survived.

394.    KENNETH EVANS and KENYA EVANS, as the Independent Administrators of the Estate of KHAYLA J. EVANS, Deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Act.  (*See* **Exhibit A**).

395.    Attached as **Exhibit B** is an affidavit and report in compliance with the certification of Section 2-622 of the Illinois Code of Civil Procedure.

WHEREFORE, Plaintiffs, KENNETH EVANS and KENYA EVANS, pray that judgment is entered against the Defendants for an amount in excess of $100,000,000 for actual damages, compensatory damages, attorney's fees, costs, and all other just and proper relief.

### COUNT 16:   745 ILCS 10/9-102 INDEMNIFICATION CLAIM
### Illinois State Law
### (Lake County)

396.    Plaintiffs re-allege and incorporate by reference all allegations set forth in each preceding paragraph as if fully set forth herein.

397.    Pursuant to 745 ILCS 10/9-102, a local public entity is directed to pay any tort judgment or settlement for compensatory damages for which it or an employee acting with the scope of his employment is liable.

398.    Defendants acted within the scope of their employment at all times relevant.

399.    In the event that any individual defendant employed by Lake County and/or Lake County Sheriff is found liable for their conduct described herein, LAKE COUNTY, must indemnify such employee for any judgment or settlement pursuant to section 9-102.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Respectfully submitted,
SALVI, SCHOSTOK & PRITCHARD P.C.

By: /s/ Tara R. Devine
*Attorney for the Plaintiffs*

Tara R. Devine (ARDC #6280880)
Eirene N. Salvi (ARDC #6321198)
Jaclyn J. Kurth (ARDC #6336949)
SALVI, SCHOSTOK & PRITCHARD P.C.
218 N. Martin Luther King Jr. Ave
Waukegan, Illinois 60085
(312) 372-1227
tdevine@salvilaw.com
esalvi@salvilaw.com
jkurth@salvilaw.com